## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROBERT CURTIS CONVINGTON,

      Petitioner,

v.                                 CASE NO. 8:10-CV-2500-T-30TBM
                                 CRIM. CASE NO. 8:06-CR-162-T-27TBM

UNITED STATES OF AMERICA,

      Respondent.

_____/

## O R D E R

THIS CAUSE comes before the Court upon Covington's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1). The Government's response was filed on August 22, 2011 (CV Dkt. 36). Covington filed a reply to the response on September 20, 2011 (CV Dkt. 39), and a supplement to the reply on November 22, 2011 (see CV Dkt. 46).

### Background

On May 3, 2006, Petitioner, Robert Curtis Covington ("Covington" or "Petitioner") was indicted by Grand Jury in a two-count Indictment for using or causing the use of a facility of interstate or foreign commerce with the intent that a murder for hire be committed, and conspiring to do the same, in violation of 18 U.S.C. § 1958 (CR Dkt. 8). After signing a plea agreement (CR Dkt. 17), Covington pled guilty on June 28, 2006, to both counts of the Indictment (CR Dkts. 18, 21). On July 6, 2006, Covington, through his attorney, the

Office of the Federal Public Defender, filed a Motion to Remove Office of Federal Public Defender as Counsel and Request for Hearing (CR Dkt. 23).  On July 12, 2006, the Court granted Covington's motion to remove the Federal Public Defender as his counsel (CR Dkt. 28).  The Court appointed James S. Garbett as Covington's new counsel (Id.).  On August 1, 2006, the Court accepted Covington's guilty plea and adjudicated him guilty of Counts One and Two of the Indictment (CR Dkt. 30).

However, on September 13, 2006, Attorney Garbett filed a motion to withdraw as counsel (CR Dkts. 31, 34), and a motion to withdraw Covington's plea (CR Dkt. 33).  On October 6, 2006, the Court issued an order granting Attorney Garbett's motion to withdraw, and appointing Brent Armstrong as Covington's new counsel (CR Dkt. 43).  On April 18, 2007, the Court granted Covington's motion to withdraw his guilty plea (CR Dkt. 75).

On June 14, 2007, a Superseding Indictment was returned that had the same two counts as the Indictment, and added a third count for felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (CR Dkt. 81).  On June 17, 2007, Attorney Armstrong filed a motion for a hearing to determine Covington's mental competency to stand trial (CR Dkt. 83), and a motion to continue the trial (CR Dkt. 84).  On June 19, 2007, the Court granted Covington's motion to continue the trial (CR Dkt. 88).  On June 21, 2007, the Court granted the motion for a hearing to determine Covington's competency to stand trial (CR Dkt. 91).  On July 6, 2007, the Court ordered an evaluation of Covington in order to determine his competency (CR Dkt. 100).  Dr. Gamache evaluated Covington on July 27, 2007, and opined that Covington was fully competent (CR Dkt. 121 at 2).  Moreover, on July 12, 2007,

Covington filed a *pro se* Motion to Dismiss Competency Examination (CR Dkt. 105) which the Court granted on August 2, 2007 (CR Dkt. 121 at 2).[1]

On June 29, and July 12, 2007, Covington filed *pro se* motions to dismiss Attorney Armstrong as his counsel (CR Dkts. 94, 106, 107).  On July 16, 2007, Attorney Armstrong filed a motion to withdraw as counsel (CR Dkt. 112).  Covington filed another motion to dismiss Attorney Armstrong as counsel on July 17, 2007 (CR Dkt. 113).  Following a hearing, the Court granted Attorney Armstrong's motion to withdraw, and appointed Attorney Daniel Castillo to represent Covington (CR Dkt. 121).  The trial was continued to allow newly appointed counsel time to prepare for trial (CR Dkt. 125).

On September 18, 2007, Covington pled guilty to Count Three of the Superseding Indictment, the felon in possession of a firearm charge (CR Dkt. 141).  Following a jury trial, Covington was found guilty of Counts One and Two of the Superseding Indictment (CR Dkt. 206).  On January 28, 2008, Covington was sentenced to 120 months imprisonment on Counts One and Two, concurrent, and 360 months imprisonment on Count Three, consecutive to Counts One and Two, to be followed by 5 years supervised release (CR Dkt. 244).

On April 22, 2009, the Eleventh Circuit Court of Appeals affirmed Covington's convictions and sentences (CR Dkt. 302); *Covington v. United States*, 565 F.3d 1336 (11th Cir. 2009).  The Supreme Court denied certiorari on November 9, 2009 (CR Dkt. 307);

---

[1] Attorney Armstrong also filed a Notice Withdrawing Motion for Hearing to Determine Competency (CR Dkt. 108).

*Covington v. United States*, 130 S.Ct. 564 (2009) [table].  On October 18, 2010, Covington

filed a timely motion pursuant to 28 U.S.C. § 2255 (CV Dkt. 1, CR Dkt. 312).[2]

## Standards of Review

Title 28 U.S.C. § 2255 sets forth the framework for reviewing a federal prisoner's

sentence for any of the following four reasons: (1) the sentence was imposed in violation of

the Constitution of the United States; (2) the court was without jurisdiction to impose such

a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the

sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Only constitutional

claims, jurisdictional claims, and claims of error so fundamental as to have resulted in a

complete miscarriage of justice are cognizable on collateral attack. *See United States v.*

*Addonizio*, 442 U.S. 178, 184-86 (1979); *Hill v. United States*, 368 U.S. 424, 428 (1962);

*Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988).

## Ineffective Assistance of Counsel

Here, Covington challenges his convictions and sentences as unconstitutional based

on receiving ineffective assistance of counsel. Ineffective assistance claims are cognizable

under 28 U.S.C. § 2255. *See Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir.

2004).

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of

counsel claim:

---

[2]Covington filed a motion to disqualify the Honorable James D. Whittemore from participating in the § 2255 proceedings (CR Dkt. 309).  Judge Whittemore granted the motion on November 24, 2010 (CV Dkt. 7).

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

## Discussion

### Ground One

Covington asserts that counsel was ineffective in failing to request an evidentiary hearing to verify the accuracy of the criminal complaint.  He asserts that had counsel adequately investigated the matter, he would have discovered that F.B.I. Agent Rivera made several false statements in his criminal complaint affidavit.  Specifically, Covington asserts that Rivera's statements that on March 17, 2006, Agent Remaley contacted Rivera and

5

informed him that informant Chance Towner ("Towner") had been approached by two black males known as Stan and Wesly, and that Towner had a telephone conversation with Stan on that day, were false because Stan died on December 2, 2005, and Towner testified at trial that he never met Wesly.  Covington also asserts that the criminal complaint falsely indicates that Rivera received a compact disc containing recorded statements between March 17 and March 20, 2006, between Towner, Stan, Wesly, and Covington.

Covington fails to show counsel was deficient in failing to challenge the criminal complaint because he fails to show Rivera knowingly made a false statement in the criminal complaint.  Covington argues that Rivera's statements are false because Stan was dead before March 17, 2006, and therefore Wes and Stan could not have approached Towner on that date, and Stan could not have had telephone conversations with Towner in March 2006. Covington asserts that the person named "Stan" that allegedly approached Towner and spoke to him on the phone was Stanly Jefferson Jones (see e.g., CV Dkt. 1 at 44, 54). It is apparent from the record, however, that at trial Towner testified that he never learned Stan's last name (CR Dkt. 283 at 102), and Rivera testified that he eventually identified Stan as James Stanley Jefferson (CR Dkt. 282 at 74).  Although during his grand jury testimony Rivera stated that "Stan" was "Stanley Jones - - Jefferson Jones" (CV Dkt. 1-1 at 22), at best this leaves the record unclear as to the identity of the person named Stan who was involved in the conspiracy, and whose telephone conversations with Towner were recorded.[3]

---

[3]In fact, Rivera also testified at trial that he was never able to verify who Stan was (CR Dkt. 282 at 97).

6

"The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). The burden of persuasion is high and there is a strong presumption the counsel's performance was reasonable. *Strickland*, 466 U.S. at 689-90.   "[A]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).   The affidavits Covington provided in support of his § 2255 motion do not come close to establishing that the man who was identified on the taped telephone conversations as "Stan," died on December 5, 2005.

With respect to Covington's claim that Rivera lied in the criminal complaint affidavit that Wesly approached Towner on March 17, 2006, he likewise fails to demonstrate Rivera knowingly made a false statement.  Rivera's statement, to which Covington refers, says in pertinent part that "On March 17, 2006,. . .Agent. . .Remaley. . .contacted [Rivera] and advised that [Towner] was approached by two black males known as STAN. . .and WESLIE [sic]. . .seeking help with the murder of a witness. . . ." (CV Dkt. 1 at 28).  Covington argues that this statement is false because both Towner testified, and Wesly attested, that they never met each other.  Rivera's statement in the affidavit, however, does not say that Towner and Wesly met each other on March 17, 2006.  Instead, the statement reads that on March 17, 2006, Remaley contacted Rivera and told him that Towner had told Remaley that on some

7

unidentified date, Towner was approached by Stan and Wesly.  Covington does not assert that he knows what Remaley told Rivera on March 17, 2006.  Therefore, he fails to show that Rivera's statement as to what Remaley had told him, was not what Remaley actually said to Rivera.  Accordingly, Covington fails to show that Rivera made a false statement in the criminal complaint.

Because Covington fails to show that Rivera made a false statement in the criminal complaint affidavit, he cannot show counsel was ineffective in failing to request an evidentiary hearing to verify the accuracy of the affidavit.  Therefore, Covington fails to establish the first prong of the *Strickland* test.

Further, Covington fails to show prejudice.  In light of the overwhelming evidence presented at trial, including the audio and video tapes of Covington discussing how he wanted Kristy Cotto murdered, Covington's confession, and Covington's own admissions during his trial testimony, Covington fails to demonstrate there was a reasonable probability of a different outcome had counsel challenged the criminal complaint.[4]

Accordingly, Ground One does not warrant relief.

**Ground Two**

Covington complains that counsel, Daniel Castillo, was ineffective in failing to move to dismiss Counts One and Two of the Superseding Indictment on the ground that Agent Rivera provided false testimony to the grand jury, specifically, that in March 2006, Wesly

---

[4]The Court notes that Covington testified at trial that all of his conversations regarding, and his actions furthering, the conspiracy to murder Kristy Cotto were merely a "joke," and that he did not intend to have Cotto murdered  (See, e.g., CR Dkt. 284 at 136, 143).  Clearly, the jury rejected this defense.

Johnson ("Wesly") and "Stan" approached an F.B.I. informant (Towner) in West Virginia and discussed going to Florida to commit a murder.  Covington again asserts that Stan died on December 2, 2005, and that both Wesly and Towner stated that they never met each other.

Covington asserts that he was prejudiced by counsel's failure to move to dismiss Counts One and Two because he was deprived "his Constitutional right to an independent and informed Grand Jury." (CV Dkt.1-1 at 2).

Covington also appears to assert that counsel was ineffective in failing to move to dismiss Counts One and Two because the Court had orally granted his "Emergency Motion to District Court Judge" (CR Dkt. 133) in which he requested, *inter alia*, the Court direct counsel to file a motion to dismiss Counts One and Two of the Indictment (CV Dkt. 1-1 at 13-15).

First, Covington's claim that counsel was ineffective in failing to comply with the Court's order to file a motion to dismiss Counts One and Two of the Indictment is frivolous. There is no order in the record which directed counsel to file a motion to dismiss.  Instead, Judge Whittemore orally granted Covington's "Emergency Motion to District Court Judge" (CR Dkt. 133) solely "to the extent [Covington] sought an audience with the judge. . . . " (CR Dkt. 290 at 2-3).  Judge Whittemore made it clear to Covington that he was not "telling [defense counsel] how to represent [Covington] or what to do."  (Id. at 8).

Second, Covington argues that Towner's trial testimony, and Wesly's June 30, 2010 affidavit (see CV Dkt. 1 at 50-58) establish that Agent Rivera lied during his grand jury testimony, and therefore counsel was ineffective in failing to move to dismiss Counts One

and Two of the Superseding Indictment on the ground that the Government presented false testimony to the Grand Jury.  "A motion to dismiss an indictment must be made prior to trial."  *United States v. Avery*, 205 Fed. Appx. 819, 824 (11th Cir. 2006) (unpublished) (citing Fed.R.Crim.P. 12(b)(3)(B)).   Counsel could not have known of Towner's trial testimony or Wesly's affidavit until after the trial commenced.  Further, Covington does not allege or demonstrate that defense counsel was aware of Agent Rivera's June 14, 2007 grand jury testimony prior to trial, or at anytime. Moreover, during the grand jury proceedings, "[t]he government may even rely on testimony that turns out to be perjured."  *United States v. Kaley*, 579 F.3d 1246, 1267 n.13 (11th Cir. 2009) (Tjoflat, J., concurring) (citing *Anderson v. Sec'y for the Dep't. of Corr.*, 462 F.3d 1319, 1326-27 (11th Cir. 2006) (per curiam)). Finally, "[e]ven if an error occurs before a grand jury, it will not be cause to question an indictment unless the error 'substantially influenced' the grand jury's decision to issue charges, or if grave doubt existed that the decision was free from such influence." *United States v. Pendleton*, 447 Fed. Appx. 978, 981 (11th Cir. 2011) (unpublished) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)).  Even if Agent Rivera's testimony during the grand jury proceedings that Towner met both Wes and Stan in March 2006 was false, in light of the other testimony provided by Agent Rivera to the grand jury, including testimony regarding the videotape of Covington's meeting with Towner and the undercover agent in which Covington asked them to kill Ms. Cotto, and his confession to Agent Rivera (see Dkt. 1-1 at 23), Covington cannot show that Agent Rivera's allegedly false testimony substantially influenced the grand jury.  Consequently, Covington fails to show that defense

10

counsel's failure to move to dismiss Counts One and Two of the Indictment amounted to deficient performance and prejudiced his defense.

Accordingly, Ground Two does not warrant relief.

## Ground Three

Covington complains that counsel was ineffective in failing to file a motion to suppress the recorded telephone calls.  Specifically, Covington argues that his Sixth Amendment right to counsel was violated because at the time the law enforcement officers made the recorded telephone calls to him regarding the murder for hire, Covington was represented by counsel on separate pending state criminal charges for aggravated assault and felon in possession of a firearm.  He further argues that because the state charges were "'extremely closely related' to or 'inextricably intertwined' with the Federal offense of Murder-for-Hire and Conspiracy to Murder-for-Hire and Felon in Possession of a Firearm. . .the Sixth Amendment prevented the Government from deliberately initiating telephone conversation's only to elicit incriminating statement's [sic]." (CV Dkt. 1-2 at 2, 5).

"The Sixth Amendment right [to counsel]...is offense specific.  It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wis.*, 501 U.S. 171, 175 (1991) (citations and internal quotations omitted). "[T]he Sixth Amendment right to counsel 'poses no bar to the admission of the statements' made in connection to offenses for which the suspect had not been charged, despite the attachment

11

of the Sixth Amendment right on unrelated charged offenses." *Philmore v. McNeil*, 575 F.3d 1251, 1258 (11th Cir. 2009) (quoting *McNeil v. Wis.*, 501 U.S. at 176).   At the time the telephone conversations were recorded, Covington had not been charged with the federal murder-for-hire or felon in possession of a firearm offenses. Therefore, his Sixth Amendment right to counsel as to the federal offenses had not yet attached.

Covington's argument that his Sixth Amendment right to counsel had attached at the time the telephone conversations were recorded because at that time he was represented by counsel in state court on state charges for aggravated assault and felon in possession of a firearm, and those charges were "related to" or "intertwined with" the federal charges, is without merit.   Covington's prior invocation of his right to counsel on the state charges did not apply to the federal charges against him.   *See United States v. Knight*, 562 F.3d 1314, 1327-1328 (11th Cir. 2009) ("The dual sovereignty doctrine applies to the right to counsel such that an invocation of the right to counsel for a state charge does not invoke the right for an identical federal charge.") (citation omitted).   *See also United States v. Burgest*, 519 F.3d 1307, 1309-11 (11th Cir. 2008) (although defendant was represented by counsel on pending state law charges, federal agents were permitted to question defendant about potential violation of federal drug laws without presence of counsel because Sixth Amendment right to counsel had not attached with respect to any federal offense).

Because Covington's Sixth Amendment right to counsel had not attached at the time the telephone conversations were recorded, counsel's failure to file a motion to suppress

those conversations did not constitute deficient performance.  Accordingly, Ground Three does not warrant relief.

**Ground Four**

Covington complains that counsel was ineffective in failing to file for a bill of particulars.  Covington appears to assert that he was unable to adequately prepare for trial because the Superseding Indictment did not identify the co-conspirators, or identify what specific interstate facility he used during the conspiracy.  He asserts that counsel should have filed for a bill of particulars to obtain the names of known co-conspirators, and to obtain information regarding where he was "when he answered his phone when he was called by Mr. Towner[.]" (Dkt. 1-3 at 11).

Under Rule 7(f) of the Federal Rules of Criminal Procedure, a court may direct the government to file a bill of particulars. The purpose of a bill of particulars is to: (1) inform a defendant of the charges so that a defendant can prepare a defense; (2) avoid surprise at trial; and (3) enable a defendant to plead double jeopardy.  *See United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986).  "A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information *necessary* for trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (emphasis in original).  A bill of particulars is not a means to obtain generalized discovery.  *See United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985).  It is an appropriate way to discover the names of the unindicted co-conspirators who the government *plans to use as witnesses at trial*.  *See*

*United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir. 1979) (emphasis added).[5] However, a bill of particulars is not typically warranted in so far as it seeks information already available through other sources. *See United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986).

Covington has not demonstrated that he suffered any prejudice from his counsel's failure to move for a bill of particulars.  First, the Superseding Indictment sufficiently advised Covington of the nature and cause of the accusations against him as well as the time-period (see CR Dkt. 81).[6]  Second, the identity of the co-conspirators, and information identifying the interstate facilities used by Covington during the conspiracy, were available from other sources.  The affidavit attached to the Criminal Complaint identified "Stan," Covington's sister-in-law, "Pumpkin," and Pumpkin's boyfriend "Weslie" as co-conspirators (CR Dkt. 1).  The affidavit also clearly indicates that Covington used the telephone system to facilitate the conspiracy (Id.).  Further, the plea agreement Covington signed on June 12, 2006, before withdrawing his plea, indicated that he had used the telephone to solicit the murder (CR Dkt. 17 at 12).  Therefore, there was ample information available to Covington

---

[5]The Court notes that the Government did not use any co-conspirators as witnesses at Covington's trial.

[6]There are "two constitutional requirements for an indictment: 'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  The Superseding Indictment met the constitutional requirements in this case.

that would have adequately informed him of the charges against him, and allowed him to prepare a defense.

Covington has failed his burden to establish that trial counsel's failure to file a bill of particulars amounted to deficient performance, and that he was prejudiced by the alleged deficiency. Accordingly, Ground Four does not warrant relief.

**Ground Five**

In Ground Five, the precise nature of Covington's claim is unclear. The title of the claim is "Ineffective Assistance of Counsel" (CV Dkt. 1-4 at 1). Nevertheless, the gist of the claim appears to be that the Court erred, and deprived Petitioner his Sixth Amendment right to effective assistance of counsel, in failing either to provide him with new counsel,[7] or to allow him to represent himself. This claim is procedurally defaulted because he did not raise it on direct appeal. *See Boyle v. United States*, 446 Fed. Appx. 216, 2011 U.S. App. LEXIS 22623, at *13 (11th Cir. Nov. 7, 2011) (unpublished) ("To the extent Boyle's § 2255 motion raised a due process claim not barred by his sentence appeal waiver, Boyle procedurally defaulted that claim by not raising it in a direct appeal of his sentence.").[8]

To the extent Ground Five may be liberally construed as asserting a claim that counsel was ineffective in failing to: 1) file a motion to dismiss Counts One and Two of the

---

[7]Attorney Castillo was the fourth attorney assigned to represent Covington in his criminal case.

[8]The Court notes that during the September 18, 2007 status conference and change of plea hearing, Covington clearly expressed to Judge Whittemore that despite his differences with Attorney Castillo, he wanted Attorney Castillo to "stay on [his] case" (CR Dkt. 290 at 6), and that representing himself would be "a mistake." (Id. at 7-8).

Indictment; 2) file a motion to suppress; and 3) conduct a pretrial investigation and present a defense at trial, the claim will be denied for the reasons discussed in Grounds Two and Three, *supra*, and Ground Seven, *infra*.

Accordingly, Ground Five does not warrant relief.

**Ground Six**

Covington contends that his counsel was ineffective in failing to move for dismissal of the Superceding Indictment on the ground that there were no "ends of justice" findings by the Court when granting Covington's requests for continuances. The Court disagrees. The Speedy Trial Act ("STA") mandates that a trial commence within 70 days after the date the defendant appeared before a judicial officer or the date of the indictment, whichever occurs later. 18 U.S.C. § 3161(c)(1). However, "delays resulting from pretrial motions and continuances, constitute 'excludable' time and toll the speedy trial clock." *Chambliss v. United States*, 384 Fed. Appx. 897, 898 (11th Cir. 2010) (unpublished opinion) (citing 18 U.S.C. § 3161(h)). "A delay resulting from a continuance, however, only tolls the clock if the district court makes findings that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id*. (citing 18 U.S.C. § 3161(h)(7)(A)). "If the defendant is not brought to trial within the 70-day period, the defendant may move to dismiss the indictment, and the district court must grant that motion and dismiss the indictment." *Id*. (citing 18 U.S.C. § 3162(a)(2)).

Even if Covington could show that the STA was violated, his ineffective assistance of counsel claim fails because he does not demonstrate prejudice. "To succeed on an

ineffective-assistance claim, a petitioner must show that (1) his counsel's performance was deficient, and (2) this deficient performance prejudiced his defense." *Chambliss*, 384 Fed. Appx. at 898 (citing *Strickland v. Washington*, 466 U.S. at 687). Covington argues that he "suffered prejudice in that there is a reasonable probability that the Court would have acknowledged the speedy trial violation and dismissed the indictment as to Count's one and two." (CV Dkt. 1-5 at 7). With respect to a determination as to whether an indictment should be dismissed with or without prejudice, the district court must consider: (1) the seriousness of the offense; (2) the facts and circumstances that led to the dismissal; and (3) the impact of a reprosecution on the administration of justice. 18 U.S.C. § 3162(a)(2). Covington does not demonstrate or even allege that he would have won a dismissal with prejudice.

First, conspiring to commit a murder for hire is a serious offense favoring dismissal without prejudice. Second, the record clearly reflects that Covington was the primary cause of delaying the trial by filing numerous *pro se* motions, repeatedly moving for new counsel, feigning to be incompetent, etc. Therefore, the second factor clearly favored dismissal without prejudice. *See United States v. Williams*, 314 F.3d 552, 559 (11th Cir.2002) (In considering the facts and circumstances that led to the dismissal, the court should "focus on the culpability of the delay-producing conduct.") (citation omitted). Third, Covington does not demonstrate or even allege that a delay in prosecution impaired his ability to present a defense. Moreover, he asserts only a slight delay of 17 days in prosecution (CV Dkt. 1-5 at 7). Thus, the third factor also clearly favored dismissal without prejudice. *See United States*

17

*v. Phillips*, 775 F.2d 1454 (11th Cir. 1985) (dismissal of indictment for failure to try case within time limit must be without prejudice where charges are serious, delay is slight, defendant is not incarcerated awaiting trial and defendant has suffered no more harm than accrues by virtue of having being originally charged with crime).

Covington does not show that the outcome of the proceedings would have been different had counsel moved to dismiss the Superseding Indictment because once the Court dismissed the Superseding Indictment without prejudice, the Government would have obtained a new indictment. Accordingly, Covington is not entitled to relief on the ineffective assistance claim raised in Ground Six.

**Grounds Seven and Thirteen**

In Ground Seven, Covington asserts that counsel was ineffective in failing to conduct a pretrial investigation. Covington opines that had counsel conducted an investigation, it would have revealed that Towner and Dexter Logan both were traveling back and forth across state lines during March 2006. He asserts that this information would have allowed him to present the defense that the Government "artificially manufactured Federal Jurisdiction[.]" (CV Dkt. 1-6 at 1-2).

Covington also appears to assert that had counsel called Wesly Johnson, Dexter Logan, Addington Oliver, Antonio Alls, and Sharon Covington to testify at trial, their testimony would have established that Towner falsely testified at trial that: 1) Towner spoke to Stan in 2006; 2) Towner lived in West Virginia in March 2006; 3) Covington directed

18

Pumpkin to mail $300.00 to "John Cowen;" and 4) Towner lost his job because of his involvement with the F.B.I. pertaining to Covington's case.

In Ground Thirteen, Covington complains that counsel was ineffective in failing to impeach the Government's witnesses with these potential witnesses' testimony.

The failure to call particular witnesses which the petitioner thinks would be helpful is generally not considered ineffective assistance of counsel. *See Hardwick v. Crosby*, 320 F. 3d 1127, 1161 (11th Cir. 2003). Calling witnesses is a strategic choice, *Conklin v. Schofield*, 366 F. 3d 1191, 1204 (11th Cir. 2004), which courts usually avoid second-guessing. *See generally Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) (trial strategy only amounts to ineffective assistance of counsel "if it was so patently unreasonable that no competent attorney would have chosen it").

Additionally, Covington fails to meet his burden of proving objectively deficient performance, *see generally United States v. Cronic*, 466 U.S. 648, 658 (1984), let alone resulting prejudice. First, prior to the defense presenting its case, defense counsel explained to the Court that he was "making a tactical decision not call any witnesses." (CR Dkt. 285 at 5).[9] Second, Covington does not allege, nor does the record reflect that Covington gave the names, other than Sharon Covington, of these alleged witnesses to his counsel prior to trial. In fact, the record reflects that the only potential witnesses that Covington and his counsel discussed were Sharon Covington and Sharon Covington's eleven-year-old daughter

---

[9]The trial transcript indicates that Covington and counsel did discuss whether or not to call witnesses (CR Dkt. 284 at 2). The transcript also reveals that counsel's decision not to call witnesses was based, at least in part, on inconsistencies in the proposed testimony of Covington's wife (Id. at 4-5).

(CR Dkts. 283 at 214; 284 at 4-5).  Third, other that Antonio Alls and Sharon Covington, none of the alleged witnesses assert that they were available and willing to testify at the time of trial (CV Dkt. 1 at 37-66).  Fourth, the affidavits Covington offers in support of his § 2255 motion are highly suspect.[10]  It certainly is not clear that Wesly Johnson/Donald Shealey would have willingly testified on behalf of Covington at the time of trial, because he was identified as a possible co-conspirator in the murder for hire.  Alls affidavit is likewise suspect in its timing because he asserts that prior to Covington's trial, he had conversations with both Covington's defense counsel and the prosecutor in which they threatened him and essentially admitted to conspiring with each other to convict Covington (CV Dkt. 1 at 60-66). Alls shared these alleged conversations and serious accusations with Covington in August 2007 (see Id. at 63-65).  Despite having knowledge of what defense counsel and the prosecutor allegedly said to Alls, during the September 18, 2007 hearing, Covington never brought the matter to the trial court's attention.  Instead, he told the Court that defense counsel "can stay on my case" (CR Dkt. 290 at 6), and that he "unquestionably" wanted defense counsel to remain on his case (Id. at 10).  Further, in their affidavits, Logan, Johnson/Shealey, and Alls  each claim to have specific recollection of the exact words used

---

[10] The Court takes judicial notice of information found August 24, 2012, on the Federal Bureau of Prisons ("BOP") website, www.bop.gov, which indicates that the BOP currently has in its custody four individuals by the names Arrington Oliver, Antonio Lee Alls, Dexter B. Logan, and Donald S. Shealey.  Oliver, Alls, Logan, and Shealey's affidavits were signed either in June or August 2010, and were all notarized in the State of Kentucky (CV Dkt. 1 at 39, 49, 58,  66).  At the time Covington filed his § 2255 motion in October 2010, he was incarcerated at the United States Penitentiary, McCreary, Kentucky (CV Dkt. 1-21).  Logan indicates in his affidavit that he was incarcerated with Covington at McCreary (CV Dkt. 1 at 49).  Finally, Covington's applications for a writ of habeas corpus ad testificandum establish that Covington, Oliver, Alls, Logan, and Shealey were all incarcerated together at McCreary (CV Dkts. 15-18).

during extensive conversations occurring more than four years prior to the time they signed their affidavits.  It is not believable that affiants would recall those conversations with such precision.[11]  Self-serving affidavits such as those relied upon by Covington may "be viewed with extreme suspicion."  *Liberal v. United States*, 2011 U.S. Dist. LEXIS 103526, at *35 (S.D. Fla. June 7, 2011) (citations omitted).  Fifth, the affidavits are littered with inadmissible hearsay.  Sixth and finally, even if the affidavits were believable, "the affidavits must be considered in light of the proof of [Covington's] guilt at trial[.]"  *Herrera v. Collins*, 113 S. Ct. 853, 870 (1993).  That proof included, *inter alia*, the audio and video tapes of Covington discussing how he wanted Kristy Cotto murdered, Covington's confession to Agent Rivera, and Covington's own admissions at trial.  "That proof, even when considered alongside [Covington's] belated affidavits, points strongly to [Covington's] guilt." *Herrera*, 113 S. Ct. at 870.

Covington has failed his burden to show that counsel was deficient in failing to call these witnesses at trial, and that had he done so, there is a reasonable probability of a different outcome.  Accordingly, Grounds Seven and Thirteen do not warrant relief.

**Ground Eight**

Covington contends that his trial counsel rendered ineffective assistance, and denied Covington equal protection under the law, by deliberately dismissing the only African-American from the venire at his trial.  Covington further asserts that his trial counsel

---

[11]The Court is not making a determination that the witnesses are not credible.  Instead, the Court finds that the affidavits are unbelievable as a matter of law.

21

deliberately selected an all white jury in order to assist the Government in obtaining a conviction against him.

To demonstrate prejudice under *Strickland*, Covington must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 694.

Here, Covington fails to show prejudice resulting from his attorney's performance because even if it was defense counsel's intention to exclude all African-Americans from the jury, the record establishes that: 1) it was Judge Whittemore who initially suggested that Renita Battle, the only African-American in the venire, was removable for cause; and 2) that Ms. Battle was removed for cause (CR Dkt. 281 at 104-05, 108).

Further, to the extent the claim may be liberally construed as asserting that counsel was ineffective in failing to object to the Court's dismissal of Ms. Battle for cause, Covington cannot show defense counsel's performance was deficient. "The constitutional right to a trial by an impartial jury requires that those who serve on juries meet certain qualifications. At a minimum, juries must be comprised of competent and *impartial* persons." *Rogers v. McMullen*, 673 F.2d 1185, 1188 (11th Cir. 1982) (emphasis added) (footnote omitted). Ms. Battle clearly indicated that she could not be fair and impartial in Covington's case because her father had been the victim of murder (Id. at 78-79). Therefore, it is likely that even if defense counsel had objected to Ms. Batttle's exclusion for cause, his objection would have been overruled.

Finally, to the extent that the claim may be liberally construed as alleging an equal protection claim pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986),[12] "*Batson* applies only to peremptory strikes." *United States v. Elliott*, 89 F.3d 1360, 1364-65 (8th Cir. 1996). Here, neither defense counsel nor the prosecutor used a peremptory strike to excuse Ms. Battle.

Accordingly, Ground Eight does not warrant relief.

**Ground Nine**

In Ground Nine, Covington asserts that he is actually innocent of being a felon in possession of a firearm (See CR Dkt. 290 at 43). He also argues that counsel was ineffective in failing to investigate and discover witnesses, Mr. Alls and Mrs. Covington, who would have testified that Covington did not possess a firearm on October 22, 2005. Covington waived these arguments when he pled guilty to the conspiracy charge.

Pleading guilty necessarily admits the commission of the crime and waives all non-jurisdictional challenges to the constitutionality of the conviction. This waiver includes ineffective assistance of counsel claims that do not involve the decision to plead guilty. Further, "[a] defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge. . . ." *Spear v. Secretary, Department of Corrections*, 2006 U.S. Dist. LEXIS 28202, 2006 WL 1281333, *13 (M.D. Fla. 2006) (unpublished). Only

---

[12]"In *Batson*, the Supreme Court held that a prosecutor's use of peremptory strikes in even a single case to remove blacks from the jury on account of their race violates the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). That principle was extended to defense peremptory strikes in *Georgia v. McCollum*, 505 U.S. 42, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992)." *United States v. Stewart*, 65 F.3d 918, 923 (11th Cir. 1995).

an attack on the voluntary and knowing nature of the plea can be sustained. *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citing *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Unit B 1981). Further, as the Eleventh Circuit explained in *Tiemens v. United States*, 724 F.2d 928 (11th Cir. 1984):

> In *Tollet v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973), the Supreme Court reaffirmed that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." It has thus been held that a guilty plea waives all non-jurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process.

*Id.* at 929.

Ground Nine raises a claim of ineffective assistance of counsel occurring before the entry of his guilty plea. Further, Covington's claim that he is innocent of the felon in possession of a firearm charge because he did not possess a firearm was waived by virtue of the entry of his knowing and voluntary guilty plea.[13]

Finally to the extent that Petitioner argues that he is entitled to relief because he is actually innocent of the felon in possession of a firearm conviction, to establish actual innocence, a defendant must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (citations omitted). "'Actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998).

---

[13]Covington does not allege or demonstrate that his plea was involuntary.

In order to prove Covington was guilty of felon in possession of a firearm, the government would have to prove that Covington possessed a firearm, and that before doing so he had been convicted of a crime punishable by imprisonment for a term in excess of one year (CR Dkt. 290 at 40). Covington does not dispute that he was a felon at the time of the October 22, 2005 incident. Further, during the guilty plea colloquy, Covington admitted that at some time on October 22, 2005, he possessed a firearm (CR Dkt. 290 at 43).

Because of the facts established at the plea colloquy, Covington is unable to demonstrate that "it is more likely than not that no reasonable juror would have convicted him" of felon in possession of a firearm. *Schlup*, 513 U.S. at 327-28. Consequently, the Court finds that Covington has failed to establish that he is actually innocent.

Accordingly, Ground Nine will be denied pursuant to the above-cited authority.

**Grounds Ten, Eighteen, Nineteen, and Twenty**

In Ground Ten, Covington complains that counsel was ineffective in failing to argue that this Court did not have subject matter jurisdiction over his case because the Government manufactured jurisdiction by directing Towner to travel out of state to call Covington. In Ground Eighteen, Covington asserts that his sentence was enhanced as an armed career criminal based on unconstitutional prior state convictions.[14] In Ground Nineteen, Covington avers that he is actually innocent of being an armed career criminal because the prior state conviction for battery in a detention facility was unconstitutionally obtained, and does not

---

[14]Covington asserts that the state court convictions have not yet been overturned, and that this claim "is not yet ripe for review." (CV Dkt. 1-17 at 2). He requests, therefore, that the Court hold the claim in abeyance, or dismiss it without prejudice (Id.).

qualify as a violent felony under 18 U.S.C. § 924(e)(2)(B).  In Ground Twenty, Covington asserts that counsel was ineffective in misadvising him during the change of plea hearing that his prior state conviction for armed possession of cocaine was a qualifying offense under the Armed Career Criminal Act.  Covington argues that the armed possession of cocaine conviction does not qualify as a serious drug offense under the Armed Career Criminal Act because under Florida law the maximum penalty for that offense was five years' imprisonment.[15]   Covington appears to allege that had counsel not misadvised him, Covington would not have pled guilty to the felon in possession of a firearm count. Covington also appears to again assert that he is actually innocent of being an armed career criminal.

Covington is not entitled to review of these claims because the Eleventh Circuit already has decided them. "[O]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255."  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (section 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, court will not reconsider  an issue already decided on direct appeal).

---

[15] Under the Armed Career Criminal Act, a "serious drug offense" is defined as a state offense, carrying a maximum sentence of 10 years or more and involving, *inter alia*, possessing with intent to distribute a controlled substance as defined under federal law. 18 U.S.C. § 924(e)(2)(A)(ii).

26

On direct appeal, Covington argued, *inter alia*, that this Court did not have subject matter jurisdiction because the Government manufactured jurisdiction (CV Dkt. 36-1 at docket pages 35-39).  Covington also argued that this Court improperly applied the Armed Career Criminal Offender enhancement because his prior conviction for battery in a detention facility was invalid (Id. at docket pages 42-48).  The Eleventh Circuit rejected these claims, specifically finding in pertinent part that the Government did not manufacture federal jurisdiction (CR Dkt. 302 at docket pages 10-13), and that Covington's knowing and informed guilty plea to Count Three of the Superseding Indictment was an express admission that the Armed Career Criminal Act applied to him (Id. at docket pages 15-17).

Prior resolution bars reconsideration of Covington's claims that counsel was ineffective for failing to challenge jurisdiction, that his sentence was improperly enhanced under the Armed Career Criminal Act, and that counsel misadvised him regarding his status as an Armed Career Criminal. The Eleventh Circuit resolved these issues against him on April 22, 2009, in *United States v. Covington*, 565 F.3d 1336 (11th Cir. 2009). Generally, claims raised and disposed of in a previous appeal are precluded from reconsideration in a § 2255 proceeding. *Davis v. United States*, 417 U.S. 333 (1974); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).

Further, Covington has established no extraordinary circumstance that would justify reconsideration of these claims. *See Schlup*, 513 U.S. 298; *Davis v. United States*, 417 U.S. 333 (1974).

27

Finally, to the extent he argues that he is actually innocent of the armed career criminal enhancement because both the battery in a detention facility conviction and the armed possession of cocaine conviction are not qualifying convictions, the Court finds that Covington is not entitled to relief on this claim because he has procedurally defaulted the instant claim. "[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. This rule generally applies to all claims, including constitutional claims." *Lynn*, 365 F.3d at 1234. Covington could have raised this claim on direct appeal, therefore the instant claim is procedurally barred. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (finding petitioner's claim that he was erroneously sentenced as a career offender could have been raised on direct appeal).

Covington's procedural default can be excused, however, if one of the two exceptions to the procedural default rule applies. *McKay*, 657 F.3d at 1196. The exceptions are: (1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence. *Lynn*, 365 F.3d at 1234. Under the cause and prejudice exception, a § 2255 movant can avoid application of the procedural default bar by showing cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error. *McKay*, 657 F.3d at 1196. "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). Under the actual innocence exception, a movant's procedural default is excused if he can

28

show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself. *Id*.

Covington does not allege or show cause and prejudice for not raising this claim on direct appeal.  Further, the Court dispenses with the actual innocence exception because "the actual innocence exception does not apply to [Covington's] claim that he was erroneously sentenced as a career offender." *McKay*, 657 F.3d at 1200; *see also Goodloe v. United States*, 448 Fed. Appx. 980, 2011 U.S. App. LEXIS 24739, 2011 WL 6156843 at *1 (11th Cir. Dec. 13, 2011) ("[t]he actual innocence exception requires factual innocence, not mere legal innocence, and enhanced sentencing is a matter of legal, not factual, innocence.").

Therefore, for the above-stated reasons, Grounds Ten, Eighteen, Nineteen, and Twenty must be denied.

**Ground Eleven**

Covington complains that trial counsel was ineffective in deliberately failing to object to the Government's failure to disclose exculpatory and impeachment evidence.  Specifically, Covington asserts that the Government failed to disclose that: 1) Agent Rivera lied when he testified that: a) on March 17, 2006, Towner was approached by Stan and Wesly, because Towner never met Wes, and Stan died in December 2005; and b) that he never spoke to Wesly, because Wesly's affidavit shows that he and Rivera spoke on the telephone;  2) Rivera threatened an eyewitness, Antonio Alls;  3) Towner could not have been approached by Stan and Wesly in West Virginia on March 17, 2006, because Logan and Towner moved to Tampa on March 14, 2006; and 4) Towner could not have been calling Stan because the

telephone number Towner was calling was not Stan's number, but instead was Arrington

Oliver's telephone number.

First, Covington cannot demonstrate counsel performed deficiently in failing to object

to the Government's failure to disclose exculpatory and impeachment evidence because

Covington fails to allege that counsel knew that the Government failed to disclose any

evidence.  In fact, Covington alleges that "the Government failed to disclose, that Agent

Rivera, was committing perjury. . ." (CV Dkt. 1-10 at 3); "the Government did not disclose

that Stan, had been dead. . .Counsel, did not know that Stan, had been dead because the

Government did not disclose this information " (Id. at 4); "[Rivera's and the prosecutor's

alleged threats to Alls were] not disclosed to Counsel by the Government. . ." (Id. at 6) and

counsel did not "have any knowledge of this conversation at all. . ." (Id.); "the Government

did not disclose that Mr. Towner was in the State of Florida and not in West Virginia. . ." (Id.

at 7); and "the Government did not disclose that the number Mr. Towner, was calling. . .did

not belong to Stan but to . . .Oliver. . ." (Id.).  Counsel could not have deliberately failed to

object to the Government's failure to disclose evidence when counsel did not know that the

Government had failed to disclose evidence.

Second, in light of the overwhelming evidence of Covington's guilt, Covington has

not established that the allegedly deficient performance prejudiced the defense.

Finally, to the extent that Covington's claim may be liberally construed as asserting

a substantive *Brady v. Maryland*, 373 U.S. 83 (1963) claim, the claim does not warrant relief.

First, because these issues were available to Covington during the appeal,[16] but were not raised, they are procedurally defaulted. *See Bousley*, 523 U.S. at 622-24 (claims that previously were available and were not raised in a prior proceeding are procedurally defaulted and barred from consideration on collateral review). Second, the claim lacks merit. Under *Brady*, the failure to disclose evidence favorable to a criminal defendant "violates due process where the evidence is material either to guilt or to punishment." *Id*., 373 U.S. at 87. For the evidence to be material, there must be "a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler v. Greene*, 527 U.S. 263, 289 (1999). Having reviewed the materiality of the evidence allegedly withheld in violation of *Brady* in light of the other evidence at trial, the Court concludes that Covington has not made a sufficient showing of *Brady* materiality.

Accordingly, Ground Eleven does not warrant relief.

**Ground Twelve**

In Ground Twelve, Covington again asserts that counsel was ineffective in failing to call witnesses. To the extent Covington again argues that counsel was ineffective in failing to call witnesses to challenge the evidence establishing that he committed the murder-for-hire offenses, the claim is denied for same reasons discussed in this Order denying Grounds Seven and Thirteen, *supra*.

---

[16]For instance, Alls states that prior to Covington's trial, he told Covington that both Rivera and the prosecutor had threatened Alls (CV Dkt. 1 at 63-65), and Covington admits Alls told him about the threats (Dkt. 47 at 4-5). Also, in his motion for reconsideration of the order denying his motion for a new trial, Covington asserted that the person known as "Stan" died prior to March 2006 (CR Dkt. 241 at 8).

To the extent that Covington appears to challenge his plea-based conviction for felon in possession of a firearm on the ground that he is actually innocent of the charge because he did not possess a firearm on October 22, 2005, the claim likewise lacks merit for the same reasons discussed in this Order denying Ground Nine, *supra*, i.e., he admitted during his guilty plea hearing that he had possession of a gun on October 22, 2005.

Accordingly, Covington is not entitled to relief on Ground Twelve.

**Ground Fourteen**

Covington complains that counsel was ineffective in failing to object to the prosecutor knowingly using perjured testimony during both the grand jury proceedings and trial. Specifically, Covington again asserts that the prosecutor knew that Agent Rivera's testimony that Wesly and Stan approached Towner in March 2006 was false because Towner testified that he never met Wesly, and that the prosecutor knew that Stan died in December 2005. Covington also asserts that the prosecutor knew Towner testified falsely when he said that Covington had called him from his cell phone. Covington further asserts that Towner lied when he testified that he lost his job as a result of cooperating in the investigation.

This claim fails because Covington has not shown that the prosecutor knowingly used, or failed to correct, false testimony, and that the allegedly false testimony was material. In *United States v. Duran*, 2012 U.S. App. LEXIS 16609 (11th Cir. Aug. 9, 2012), the Eleventh Circuit stated in pertinent part:

A *Giglio*[17] error occurs when undisclosed evidence demonstrates that the prosecution used perjured testimony and that the prosecution knew, or should have known, of the perjury. *Ford v. Hall*, 546 F.3d 1326, 1331 (11th Cir. 2008). To prevail on a motion for a new trial claim based on a *Giglio* claim, the defendant "must establish that the prosecutor 'knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony,' and that the falsehood was material." *Tompkins v. Moore*, 193 F.3d 1327, 1339 (11th Cir. 1999). For the purposes of a *Giglio* claim, "the falsehood is deemed to be material if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (internal quotation marks omitted).

*Id.*, at *7.

For the reasons explained, *supra*, Covington has not established that either Rivera or Towner testified falsely. Even if the testimony Covington identifies was false or not completely accurate, it was not material. In light of the overwhelming evidence of Covington's guilt, including the taped telephone conversations, Covington's confession, and Covington's admissions during his trial testimony, there is no reasonable likelihood that the allegedly false testimony could have affected the judgment of the jury.

Accordingly, Ground Fourteen does not warrant relief.

**Ground Fifteen**

Covington complains that trial counsel was ineffective in failing to obtain telephone records which would have proven that Rivera and Towner knowingly presented perjured testimony. Covington appears to assert that the telephone records would have shown that: 1) each time Towner called Covington, he did so only "after he went back across the State

---

[17]*Giglio v. United States*, 405 U.S. 150 (1972).

of Florida lines;" 2) the telephone number Towner called when he was allegedly speaking to Stan, was not the number to Stan's telephone, but the number to Arrington Oliver's telephone; and 3) the telephone number Towner asserted was his, actually was Dexter Logan's telephone number.

The Court fails to see how counsel's alleged failure to obtain the telephone records prejudiced Covington.[18] During trial, the Government presented several taped conversations of telephone calls Towner made to both Covington and "Stan." Covington admitted during his testimony that he spoke to Towner on the telephone, that it was his voice on the tapes, and that he said the things that were recorded on those tapes (CR Dkt. 284 at 45). Therefore, to the extent Covington's claim could be construed as implying that the telephone records would establish that Towner never spoke to Covington, the trial record clearly refutes that claim.

To the extent that it appears Covington argues that the telephone records would have established that Towner never spoke to Stan because the telephone number Towner called when he was allegedly talking to Stan, actually belonged to Oliver, the claim also lacks merit. Covington acknowledged at trial that there were taped telephone conversations between Towner and a person identified only as "Stan" (CR Dkt. 285 at 57-59), and Covington had telephone conversations with Towner in which Covington admitted having spoken to both Stan and Wesly (CR Dkt. 285 at 17-18). Further, even if the number Towner

---

[18]The Government asserts that the telephone records were provided to the defense during discovery (CV Dkt. 36 at 19).

called was the number to a phone that belonged to Oliver, that would not disprove that a person identifying himself as "Stan" was using that phone to speak to Towner.

Finally, to the extent Covington appears to assert that the telephone records would establish that the Government manufactured jurisdiction because the records would show that Towner would leave Florida before calling Covington, the claim lacks merit. Even if the records somehow would have helped to establish that Towner attempted to manufacture federal jurisdiction by intentionally calling Covington from out of state, as the Eleventh Circuit noted, there was other evidence presented at trial which established that Covington used, or caused another to use, other interstate facilities, i.e., the mail, and that other activities crossed state lines (CR Dkt. 302 at 13). Consequently, Covington fails to show a reasonable probability of a different outcome at trial had counsel obtained the telephone records.

Accordingly, Ground Fifteen does not warrant relief.

**Ground Sixteen**

Covington complains that trial counsel was ineffective in denying him his right to be present during all material stages of the trial. Specifically, Covington complains that he was not, and never waived his right to be, present at a side bar during the jury selection stage of the trial. He further complains that neither the Court nor defense counsel "fully apprised" him of the nature of the side bar. Covington asserts that as a result of his absence during the side bar, trial counsel "assisted" the Government in selecting an all white jury. Covington asserts that had he been present at the side bar, he would have objected to the Court dismissing the only potential African-American juror for cause. He also argues that had he

35

be given the opportunity to object, the African-American juror would not have been dismissed for cause.

Even assuming trial counsel's performance was deficient in this instance in holding a discussion with the trial court outside of Covington's presence,[19] this Court would be precluded from granting Covington the relief he seeks. The United States Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). The exclusion of Covington from the bench conference could have violated *Stincer* if Covington's presence would have contributed to the fairness of the proceedings. However, as the Eleventh Circuit has held in addressing a defendant's absence, under *Strickland*, Covington must prove more to establish that he is entitled to habeas relief on an ineffective assistance of counsel claim. *See Diaz v. Crosby*, 402 F.3d 1136, 1142-43 (11th Cir. 2005). When the standards of *Strickland* are applied to ineffective assistance of counsel claims, those claims will fail if the petitioner cannot establish either of *Strickland's* two grounds. *See Sims*, 155 F.3d at 1305. To secure relief in this habeas proceeding, Covington must demonstrate that trial counsel's performance was deficient and that he suffered prejudice as a result of the deficient performance.

_____

[19]The record clearly demonstrates that Covington's attorney asked him if he wanted to be present at the side bar, and Covington declined (CR Dkt. 281 at 106-07). Covington, however, asserts that he did not knowingly waive his right to be present at the side bar because his attorney failed to adequately explain to him that the issue which was being discussed was dismissal of the only potential African-American juror.

Covington has not adequately explained how his presence at the bench conference would have contributed to the fairness of his trial.

Covington asserts that had he been present at the side bar, "he would have made a specific objection pursuant to controlling Supreme Court authority, that by [sic] dismissing the only black juror is fundamentally unfair in violation of due process and equal protection [sic] purposeful racial discrimination in selection of the venire violates this Petitioner's right to equal protection." (CV Dkt. 1-15 at 3). Covington bears the burden of establishing that his counsel was ineffective. *See Strickland*, 466 U.S. at 687; *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the "performance" prong as well as the "prejudice" prong of a *Strickland* claim, and both prongs must be proved to prevail.").

The Court finds that Covington fails to demonstrate how he was prejudiced by his absence from the side bar. His vague, conclusory, and self-serving statement that had he been present at the side bar, his objection to the dismissal for cause of the only potential African-American juror would have been sustained, is not sufficient to establish ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations presented in support of an ineffective assistance of counsel claim are insufficient to raise a constitutional issue).

First, to the extent Covington argues that he can show prejudice as a result of his absence during the side bar because the Court would have agreed with his argument that it is "fundamentally unfair" to dismiss the only African-American in the jury pool, his

argument fails.  The Supreme Court has "impose[d] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." *Holland v. Illinois*, 493 U.S. 474, 483 (1990) (quotation omitted).

Second, it is apparent from the record that the only African-American in the jury pool was excused for cause because she stated that she could not be fair and impartial to Covington because her father had been murdered, and his murderer had never been caught (CR Dkt. 281 at 78-79).[20]  Consequently, Covington fails to show a reasonable probability of a different result had he been present during the side bar.

Accordingly, Ground Sixteen does not warrant relief.

**Ground Seventeen**

In Ground Seventeen, Covington complains that counsel was ineffective in failing to object to the Government intimidating defense witnesses by threatening them with prosecution, and using racial slurs.  Specifically, Covington asserts that the prosecutor threatened to charge both Alls and Sharon Covington with being involved in Covington's conspiracy if they testified on Covington's behalf, and that Agent Rivera threatened to kill Johnson/Shealey and Pumpkin if they "got involved" in Covington's case.

Initially, to the extent Covington's claim may be construed as a substantive claim of Government misconduct, the claim is procedurally defaulted for Covington's failure to raise

---

[20]To exclude a prospective juror for cause, a party must demonstrate through questioning that the juror lacks impartiality. *Wainwright v. Witt*, 469 U.S. 412, 423 (1985).  The potential juror's responses to Judge Whittemore's questions demonstrated that she lacked impartiality.

it at trial and on direct appeal.  Covington has not asserted cause or prejudice for the default, nor has he established a fundamental miscarriage of justice will occur if the Court does not consider the claim on the merits.

Covington's claim that counsel was ineffective in failing to object to the Government's alleged intimidation of defense witnesses likewise does not merit relief. "Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant." *United States v. Goodwin*, 625 F.2d 693, 703 (5th Cir. 1980) (citations omitted). Covington's allegations of threats against witnesses, however, are conclusory. None of the alleged witnesses' affidavits indicate that the witnesses decided not to testify as a result of intimidation by the Government.[21]  Further, Covington fails to show that counsel was deficient in failing to bring the alleged Government intimidation to the trial court's attention because Covington neither alleges nor does the record reflect that counsel was aware of the alleged misconduct by the prosecutor and Agent Rivera.   Finally, in light of the overwhelming evidence establishing Covington's guilt, the Court finds that there was no reasonable probability that these witnesses' testimony would "undermine confidence in the outcome" of the case.

Accordingly, Ground Seventeen does not warrant relief.

---

[21]In fact, Alls asserts that after he was allegedly threatened, he told defense counsel on November 5, 2007, that he was "willing to testify for Robert Covington."  (CV Dkt. 1 at 65).  The trial transcript also shows that Sharon Covington was willing to testify at trial, but that counsel made a tactical decision not to call her as a witness.

**Ground Twenty-One**[22]

Covington complains that the Presentence Report contains fraudulent information. The claim must be denied because it is procedurally defaulted and lacks merit.

As a general rule, a sentencing error claim like Covington's must be raised on direct appeal or else it is barred in a § 2255 proceeding. *Lynn*, 365 F.3d at 1234. This "procedural default" may be excused to permit a subsequent habeas motion only if a defendant can first demonstrate either "cause" and "actual prejudice," or a miscarriage of justice, i.e., that he is "actually innocent." *Bousley v. U.S.*, 523 U.S. 614, 622 (1998). Covington procedurally defaulted this claim when he did not raise it on direct appeal. The claim was known to him prior to sentencing and direct appeal. He does not claim that he has cause and actual prejudice to excuse his default.

Moreover, as stated *supra*, the Court dispenses with Covington's assertion that he is actually innocent of the armed career criminal sentencing enhancement because "the actual innocence exception does not apply to [Covington's] claim that he was erroneously sentenced as a career offender." *McKay*, 657 F.3d at 1200.

Finally, for reasons discussed, *supra*, Covington wholly fails to establish that the PSR included any knowingly false information.

Accordingly, Ground Twenty-One does not warrant relief.

It is therefore **ORDERED AND ADJUDGED** that:

---

[22]Respondent did not respond to this claim (see CV Dkt. 36).

40

1.      Covington's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28

U.S.C. §2255 (CV Dkt. 1) is **DENIED**.

2.      The Clerk shall close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Covington is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Covingont "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that ""he issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Covington cannot make the requisite showing in these circumstances.

Finally, because Covington is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on September 4, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copy furnished to:
*Pro Se* Petitioner
Amanda C. Kaiser, AUSA